ROBERT L. REESE AND MARIE REESE, et al., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Reese v. Commissioner
Docket Nos. 4209-74, 5630-74, 5832-74, 6361-74.
United States Tax Court
T.C. Memo 1976-198; 1976 Tax Ct. Memo LEXIS 204; 35 T.C.M. (CCH) 857; T.C.M. (RIA) 760198; June 21, 1976, Filed John J. Poserina, Jr., for the petitioners. Lowell F. Raeder, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent has determined deficiencies in Federal income tax for the year 1972, in these four consolidated cases as follows: Robert L. and Marie Reese, docket No. 4209-74, in the amount of $561.08; Richard and Catherine Yacovelli, docket No. 5630-74, in the amount of $696.75; William B. and Clara Freeman, docket No. 5832-74, in the amount of $414.50 and Anthony Manupello, docket No. 6361-74, in the amount *205 of $887.83. The petitioners in the first three dockets are husband and wife, the wives being petitioners solely by reason of having filed a joint return; therefore the term (petitioners) will hereafter refer only to petitioner (husbands), and to the remaining petitioner in docket No. 6361-74. The only issue remaining for decision [2] is whether transportation expenses incurred by petitioners in traveling by private automobiles between their residences and places of employment are deductible under section 162(a), I.R.C. 1954, [3] because petitioners transported tools necessary to the performance of their employment. FINDINGS OF FACT Some of the facts *206 have been stipulated and are found accordingly. All petitioners resided in New Jersey at the time of filing their petitions herein.Petitioners filed their respective Federal income tax returns for 1972 with the Philadelphia Service Center, Philadelphia, Pennsylvania. Sometime in late 1968, work commenced in Salem, New Jersey, on the construction of a nuclear power generation plant. As of the date of trial, construction of the plant was continuing. Each of the petitioners was employed at the plant during the year in issue. Petitioner Robert L. Reese resided in Millville, New Jersey, at all times relevant to these proceedings. In 1972 Reese was a member of the IBEW, Local No. 592, Vineland, New Jersey. He was employed as an electrician on the construction of the Salem plant for approximately 9 months of that year, but was subject to reassignment at any time. Millville is about 30 miles from the Salem job-site. Reese commenced employment at the plant in February 1969 and was still working there as of the date of trial. Reese drove his Rambler sedan to and from work each day, transporting approximately 150 to 175 pounds of electricians's tools in the trunk of his car. *207 Petitioner Richard Yacovelli resided in Clayton, New Jersey at all times relevant to these proceedings. In 1972 Yacovelli was a member of the IBEW, Local 592, and was employed as an electrician on the construction of the Salem plant for about 250 days of that year. Clayton, New Jersey is about 37 miles from the Salem plant. Yacovelli drove his 1965 Ford daily transporting tools weighing approximately 175 pounds in two boxes and a canvas bag with total measurements of 3 feet X 3 feet. Among these tools were sidecutters and ladles for pouring lead. Yacovelli had been working at the Salem plant since 1968, and has continued to work there as of the date of trial. Petitioner William B. Freeman resided in Newfield, New Jersey at all times relevant to these proceedings. In 1972 Freeman was also a member of the IBEW, Local 592 and employed as an electrician on the construction of the Salem plant. Newfield is approximately 36 miles from the Salem plant.
Freeman drove his 1970 Ford automobile daily carrying 125 to 150 pounds of electrical tools consisting of two tool boxes with total measurements of 3 feet X 3 feet. Freeman worked at the Salem plant from 1971 until January 1974. *208 Petitioner Anthony Manupello resided in Pennsville, New Jersey at all times relevant to these proceedings. In 1972, Anthony Manupello (hereafter Manupello) was a member of the Iron Workers Union, No. 399 in Camden, New Jersey, and was employed as an ironworker on the construction of the Salem plant for approximately 10 months of that year. Pennsville is about 20 miles from the jobsite. Manupello began working at the Salem plant in 1970, and was working there as of the date of trial. Manupello drove his 2-door Ford automobile daily transporting approximately 150 to 155 pounds of tools in the trunk. These tools measured approximately 3 feet X 3-1/2 X 2-1/2 feet. Petitioners Reese, Yacovelli, Freeman and Manupello's regular scheduled working hours were from 8 a.m. to 4:30 p.m. on Monday through Friday, but it was not unusual for their actual hours to vary due to substantial amounts of overtime work during 1972. Generally, the electricians would work the same overtime hours, but on occasions only some of the electricians would work overtime and the hours would then vary among individual workers. In none of these cases was public transportation available. The unions involved *209 required their members to carry their own tools. The tools each petitioner was required to carry filled substantially all of the trunk space in the automobile that he used to drive to and from work. There was no safe place at the jobsite where petitioners could store them. Respondent has disallowed the deduction for transportation expenses claimed by all petitioners on the ground that they incurred personal commutation expenses under section 262. OPINION The issue presented for decision is whether the automobile expenses incurred by petitioners in traveling between their respective residences and the Salem, New Jersey jobsite are deductible under section 162(a)[4] by reason of the fact that their employment required them to transport their tools. Respondent has characterized these expenditures as personal, nondeductible commutation expenses. Section 262, [5]section 1.162-2(e), [6] Income Tax Regs.
*210 It is well settled that the cost of traveling from one's home to his place of employment is generally a nondeductible personal expense. Section 262; Fausner v. Commissioner,413 U.S. 838 (1973), rehearing denied 414 U.S. 882 (1973); Commissioner v. Flowers,326 U.S. 465 (1946); Eugene G. Feistman,63 T.C. 129 (1974); Frank H. Sullivan,1 B.T.A. 93 (1924). As the Supreme Court stated in Fausner v. Commissioner,[7]supra, at 839: * * * Congress has determined that all taxpayers shall bear the expense of commuting to and from work without receiving a deduction for that expense. We cannot read § 262 of the Internal Revenue Code as excluding such expense from "personal" expenses because by happenstance the taxpayer must carry incidentals of his occupation with him. Additional expenses may at times be incurred for transporting job-required tools and material to and from work. Then an allocation of costs between "personal" and "business" expenses may be feasible. * * * [Footnotes omitted]. *211 The requirements for allowing a deduction for additional expenses for carrying job-related tools under Fausner were articulated in our decision in Eugene C. Feistman,supra, at 135: It is not enough, however, that the taxpayer demonstrate that he carried tools to work. He must also prove that the same commuting expenses would not have been incurred had he not been required to carry the tools. Thus, if he would have driven to work in any event, the fact that he carries "tools" with him is not an additional expense, and no part of the commuting cost is deductible. Harold Gilberg, 55 T.C. at 619. * * * Both parties agree that this is the standard to be applied.[8] Petitioners acknowledge that they would not, in any event, have used public transportation, but all maintain that they would have formed a car pool except for the fact that they carried tools to the jobsite. Since the tools of each petitioner occupied substantially all of the space in the trunk of the car each petitioner drove, [9] petitioners contend they were forced to drive individually in their own cars, incurring additional expense (over and above the cost of a car pool) that *212 is solely attributable to the necessity of carrying tools. Petitioners contend that but for the business necessity of carrying tools, these expenses would have been avoided by a car pool, and they therefore are entitled to deduct the expenses of driving to and from work under the rationale of Fausner v. Commissioner,supra.
*213 Based on a careful examination of the record, we reject petitioners' argument, since we believe petitioners would have driven their own cars to and from work whether or not they were required to carry tools. Petitioners were required to work a significant amount of overtime in 1972. While in some cases the overtime would be on the same day, for the same duration, and at the same time of day for all the individuals that were identified as potential members of the putative car pool, petitioners concede that the day, time of day, and duration of overtime also varied among workers on different occasions. Petitioners apparently were required to be available from day to day for overtime work when and as needed. We simply do not believe that petitioners would form a car pool requiring each member thereof to accomodate his hours away from home to the vicissitudes of the work schedule of every other member of the car pool. This belief is fortified by the vague nature of the testimony petitioners offered concerning the specific details of any car pool arrangement that may have been considered. Only fragmentary and incomplete information was provided concerning the relative locations *214 of the residences of the petitioners (and other prospective members of a car pool) to each other and to the job location; the routes to be taken by the car pool; [10] or the logistics contemplated for variations in schedules due to overtime work. We conclude on the record before us that petitioners have failed to "prove that the same commuting expenses would not have been incurred had he not been required to carry the tools." Eugene G. Feistman,supra, at p. 135. Respondent was therefore correct in disallowing the deductions in issue. *215 Decisions will be entered for the respondent
Footnotes
1. By order of this Court dated February 4, 1976, the following cases were consolidated for purposes of briefing and opinion: Robert L. and Marie Reese, dkt. No. 4209-74; Richard and Catherine Yacovelli, dkt. No. 5630-74; William B. and Clara A. Freeman, dkt. No. 5832-74 and Anthony Manupello, dkt. No. 6361-74.↩
2. Respondent disallowed interest expense in dkt. No. 4209-74; contributions in dkt. No. 5630-74; and a deduction for tools and work clothes and shoes in dkt. No. 6361-74. Since petitioners appear to concede these issues on brief, and in any event did not introduce any proof on these issues, they must be decided for respondent. Rule 142, Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111↩ (1933). 3. All references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
4. Sec. 162(a) provides, in pertinent part: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * *. ↩
5. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
6. § 1.162-2. Traveling expenses. * * *
(e) Commuters' fares are not considered as business expenses and are not deductible.↩
7. The Supreme Court decision in Fausner resolved a prior conflict in the Circuit Courts of Appeal. Compare Sullivan v. Commissioner,368 F.2d 1007 (2nd Cir. 1966) and Tyne v. Commissioner,385 F.2d 40 (7th Cir. 1967) with Fausner v. Commissioner,472 F.2d 561↩ (5th Cir. 1973).
8. Petitioners at one point appear to have contended that the expenses were deductible as transportation attributable to temporary employment at a location away from their tax homes. However, petitioners introduced no evidence that the assignments were temporary, probably because it is very clear that the assignments were of an indefinite nature. Additionally, petitioners do not address this issue on brief. We therefore conclude that petitioners abandoned any reliance they may have originally placed on this theory. ↩
9. Most of the testimony related to the weight and square feet occupied by the tools rather than cubic feet. We entertain some doubts that the bulk of the tools precluded the formation of a two-man car pool. However, since there was at least some uncontradicted testimony to this effect, and since respondent agreed to a requested finding that the one set of tools occupied substantially all of the trunk space, we assume that the need to carry tools precluded the formation of a car pool in the instant cases.↩
10. After petitioner Yacovelli, who lives in Clayton, testified that he discussed a car pool with an individual in Williamstown and another individual from Malaga, the following dialog occurred: "Q: Now, where's Williamstown in connection to Clayton? A: It's the next town. Q: In which direction? A: I'd say east, I guess; I don't know. Q: And the other fellow, where did he live? A: Malaga. Q: Where's that in connection to Clayton? A: It's probably south." The record does not contain a map or any other demonstrative evidence enabling even the fragmentary data provided to be evaluated in a meaningful way.↩